## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| TRACEE D. HILTON-RORAR | ) | CASE NO.: |
| 80 Thorlone Avenue | ) | |
| Akron, Ohio 44312 | ) | JUDGE: |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EDWARD L. GILBERT | ) | |
| (Individual and Official Capacity) | ) | |
| One Cascade Plaza, Suite 825 | ) | |
| Akron, Ohio 44308 | ) | |
| | ) | |
| and | ) | |
| | ) | **VERIFIED COMPLAINT** |
| EDWARD L. GILBERT CO., LPA | ) | **Jury Demand Endorsed Herein** |
| One Cascade Plaza, Suite 825 | ) | |
| Akron, Ohio 44308 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLIAM E. WADE | ) | |
| (Individual and Official Capacity) | ) | |
| 3195 Stanley Road | ) | |
| Akron, Ohio 44333 | ) | |
| | ) | |
|     Defendants. | ) | |

Now comes Plaintiff, Tracee D. Hilton-Rorar, by and through her counsel, Darren W.

DeHaven, and for her Complaint states as follows:

### PARTIES

1. Plaintiff Tracee D. Hilton-Rorar ("Hilton-Rorar" or "Plaintiff") is a resident of Akron,

   Summit County, Ohio. At all relevant times, Hilton-Rorar was an employee or former

   employee of Edward L. Gilbert Co., LPA.

2.  Defendant Edward L. Gilbert ("Gilbert") is a resident of Bath Township, Summit County, Ohio, and is employed in Akron, Summit County, Ohio. At all relevant times, Gilbert was the owner of Edward L. Gilbert Co., LPA and Hilton-Rorar's direct supervisor.

3.  Defendant Edward L. Gilbert Co., LPA ("Gilbert Co.") is a legal professional association with its principal place of business located in Akron, Summit County, Ohio and lawfully conducting business in the State of Ohio.

4.  Defendant William E. Wade ("Wade") is a resident of Akron, Summit County, Ohio.

## JURISDICTION AND VENUE

5.  Pursuant to 28 U.S.C. § 1331, this Court has original subject matter jurisdiction over the claims of Plaintiff that arise under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§2510 et seq., the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 et seq., and the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 et seq.

6.  Venue is proper in the United States District Court for the Northern District of Ohio under 28 U.S.C. §§ 139l (b)(l), (b)(2), (d). As alleged in this Complaint, the events or omissions giving rise to the wrongdoing occurred in the Northern District of Ohio. Further, Defendants are subject to personal jurisdiction in the Northern District of Ohio because Defendants Gilbert and Wade are Akron, Summit County, Ohio residents and Defendants Gilbert Co.

7.  This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because it is part of the same case or controversy as Plaintiff's federal claims.

## FACTUAL ALLEGATIONS

8.  In February 2006, Hilton-Rorar began her employment with Gilbert Co. as a law clerk.

9.  In December 2007, Hilton-Rorar resigned from Gilbert Co.

10. In March 2009, Hilton-Rorar began "renting" office space from Gilbert Co.

11. On February 19, 2010, Hilton-Rorar entered into an employment contract with Gilbert Co.

12. On October 14, 2011, Hilton-Rorar resigned from Gilbert Co.

13. On or about November 1, 2012, Gilbert Co. hired Hilton-Rorar for "briefing work" at $75.00 per hour.

14. On or about June 15, 2015, Hilton-Rorar entered into an ongoing employment contract (i.e. Confidential Agreement between Edward L. Gilbert Co., LPA and Tracee D. Hilton-Rorar) with Gilbert Co. (Exhibit 1).[1]

15. Hilton-Rorar began her employment with Gilbert Co. on June 23, 2015 as an associate attorney and categorized as an independent contractor. (Exhibit 1).

16. On or about June 23, 2015, Hilton-Rorar brought her personal HP desktop computer (purchased on September 9, 2013) for her own use at Gilbert Co.[2] This computer was to be used exclusively by Hilton-Rorar.

17. At the start of her re-employment with Gilbert Co., Wade connected Hilton-Rorar's personal desktop computer to the shared drive.

18. Hilton-Rorar never gave permission for anyone to access her personal computer without prior authorization. In fact, Hilton-Rorar had a different password than all other computers in the office. Hilton-Rorar never shared her password with anyone.

19. All of Gilbert Co.'s computers had identical passwords.

---

[1] The Confidential Agreement filed as Exhibit 1 has been fully redacted. Plaintiff is contemporaneously filing a Motion for leave to file the unredacted Agreement under seal.

[2] Hilton-Rorar purchased a new mouse on September 18, 2018.

20. All of Gilbert Co.'s computers were all-in-one machines. Hilton-Rorar's personal computer was a desktop with a tower.

21. Plaintiff's personal desktop computer contains confidential, private, and personal information, including, but not limited to, personal passwords, communications with legal counsel protected by attorney-client privilege, personal email account, medical records, photographs, information about her then minor children (not accessible through the company's shared drive).

22. Pursuant to the contract, Hilton-Rorar's primary duties as an associate attorney were drafting and filing legal documents, monitoring discovery, monitoring deadlines and court dates, communicating with opposing counsel, in-take client calls, trial preparation and supervising law clerks. (See Exhibit 1).

23. In October 2015, Hilton-Rorar's role at Gilbert Co. changed from associate attorney to managing associate.

24. The employment contract stated that Hilton-Rorar would then be categorized as an employee. (See Exhibit 1, ¶ 17).

25. As a managing associate, Hilton-Rorar's duties included that of an associate attorney, plus the performance of the following duties: supervise support staff, clerical duties, support operations by maintaining office systems, control correspondence, compile supply requisitions, assign and monitor clerical functions, assist in recruiting, selecting, orienting, and training employees, and other duties that may arise from time to time. (See Exhibit 1).

26. Hilton-Rorar performed her duties is an exemplary manner and never received any reprimands/write-ups.

27. In fact, Gilbert gave Hilton-Rorar a $10,000.00 per year raise, effective September 6, 2019.

28.  Pursuant to the employment contract, Gilbert Co. was required to give Hilton-Rorar 30 days' advance written notice of intent to terminate said contract. (See Exhibit 1).

29. At all relevant times, Gilbert Co. had four employees. At the time of Hilton-Rorar's termination (and for approximately one year prior to the termination) the following persons were employees of Gilbert Co.:  Edward Gilbert, Tracee Hilton-Rorar, Jaycie Wolf ("Wolf") (Billing Clerk/ Administrative Assistant), and Sharay Lewis ("Lewis") (Law Clerk).

30. Due to the COVID-19 pandemic and the state of Ohio's mandate, Wolf and Hilton-Rorar started teleworking on March 24, 2020, per Gilbert's instruction.

31. On Tuesday, April 28, 2020, Dr. Matthew Lutz from Ohio ENT determined that Hilton-Rorar would need surgery to correct a medical condition that restricts her breathing.

32. After wearing a mask at Dr. Lutz's office for an extended amount of time, Hilton-Rorar felt like she was going to pass out.

33. On Wednesday, April 29, 2020, Hilton-Rorar had a telehealth visit with her primary care physician. Dr. Dy stated she would provide Hilton-Rorar a work excuse to continue to telework.

34. Later that morning on April 29, 2020, Gilbert informed Hilton-Rorar that everyone would have to return to work at the office on Monday, May 4, 2020. Hilton-Rorar informed Gilbert that she would be having surgery and would notify him of the date as soon as she knew. Hilton-Rorar also mentioned the Governor's mandates and informed Gilbert that she is unable to wear a mask due to an underlying medical condition and that she would

be providing a doctor's note to Gilbert on May 1, 2020 to allow her to continue to work from home.

35. On May 1, 2020, Hilton-Rorar emailed Gilbert her work excuse.

36. Gilbert called Hilton-Rorar approximately one hour later demanding an end-date for her necessity to telework. Gilbert stated he wanted an "end date" on the excuse or her doctor would have to provide an updated excuse every 7 to 10 days.

37. Gilbert followed up with an email stating, in part, "Per our conversation, can your Dr. provide an update as to how long you need to be out of the office? If unknown, I will need a 7 to 10 day up date. I need in office staff based on the nature of our work…"

38. On Monday, May 4, 2020, Gilbert called Hilton-Rorar and stated that it was his understanding that Hilton-Rorar did not have an "end date." Hilton-Rorar responded that her doctor would be providing an updated letter.

39. Gilbert then told Hilton-Rorar that he needs an "office manager" and her contract would need to be renegotiated. Hilton-Rorar then reminded Gilbert that this requested reasonable accommodation was only temporary. Gilbert responded that it was "indefinite" because Hilton-Rorar had not given him an end date and he was not going to pay for an office manager who was not there. He then stated he was going to make an adjustment to Hilton-Rorar's salary because she could not meet his needs to be in the office.

40. Hilton-Rorar stated she could manage the office remotely, but Gilbert refuted her by stating he "makes that call" and he "needs an office manager here."

41. Hilton-Rorar reminded Gilbert that she was simply asking for a reasonable accommodation to continue to work from home.

42. On May 4, 2020, Hilton-Rorar emailed Gilbert her updated Work Excuse from her doctor.

43. On May 5, 2020, Gilbert emailed Hilton-Rorar that, effective immediately, he was reducing her salary to $50,000 per year, taking away her paid vacation days, paid sick days and paid parking. He also took away some of her duties. He advised that this was "NON negotiable" and Hilton-Rorar had until the close of business to "except (sic) or reject."

44. As required, Hilton-Rorar responded before the close of business and informed Gilbert that he cannot unilaterally change their written contract and she did not agree with his proposed modifications. Hilton-Rorar then specifically stated that Gilbert was discriminating and retaliating against her based on disability. She also advised Gilbert that her surgery would most likely be scheduled for June 10, 2020 and will receive confirmation the following day from her doctor.

45. On May 6, 2020, Hilton-Rorar filed a charge of discrimination and retaliation based on disability with the Ohio Civil Rights Commission.

46. Hilton-Rorar then emailed Gilbert at approximately 8:00 am on May 6, 2020, advising him that she filed a charge of discrimination and retaliation based on disability with the Ohio Civil Rights Commission.

47. Later that day at approximately 3:20 p.m., Hilton-Rorar witnessed (through the Chrome Remote Access software program) someone attempting to access her personal desktop computer located in her office at Gilbert Co. by inputting various passwords associated with her user name and then inputting various other user names and passwords. The

computer was shut down at 3:32 p.m. Upon information and belief, Wade is the person who attempted access.

48. Then, at approximately 4:00 p.m., Gilbert terminated Hilton-Rorar's employment via email.

49. On May 7, 2020, Hilton-Rorar's legal counsel, Attorney Darren DeHaven, emailed a letter to Gilbert advising him to direct all future communications intended for Hilton-Rorar to him. He also advised Gilbert of the items, including her personal computer, that Gilbert failed to return to Hilton-Rorar.

50. Attorney DeHaven further stated: "Please note neither you nor your agents, representatives, employees, contractors, or other parties have the permission of Mrs. Hilton-Rorar to attempt to access, alter, or copy her electronically stored information on her personal computer at any time. Such conduct may give rise to five claims: 1) violation of the Stored Communications Act (SCA), 18 U.S.C. § 2701 et seq.; 2) violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), 18 U.S.C. § 2510 et seq.; 3) Ohio common law invasion of privacy/seclusion; 4) civil recover for violation of O.R.C. § 2913.04(B); and 5) Ohio common law intentional infliction of emotional distress."

51. Attorney DeHaven then asked Gilbert to advise when the items will be ready for pick-up and Hilton-Rorar would return Gilbert's items at that time.

52. On May 8, 2020, Hilton-Rorar filed a second charge of retaliation based on disability with the Ohio Civil Rights Commission due to the termination.

53. Later that day at approximately 2:20 p.m., Hilton-Rorar witnessed (through the Chrome Remote Access software program) someone hacking into her personal desktop computer

located in her former office at Gilbert Co. Upon information and belief, Wade is the person who hacked into Hilton-Rorar's personal computer.

54. At approximately 2:35 p.m. on May 8, 2020, Attorney DeHaven sent Gilbert an email stating "You are instructed to immediately cease and desist attempting to break into Tracee Hilton-Rorar's personal computer.  She is recording your efforts through her remote access.  Mrs. Hilton-Rorar will be filing a bar complaint and taking other available actions. Mrs. Hilton-Rorar will be dropping your items off at 3:30 pm today, and expects to pick up her items at the security desk in the lobby. I hope we do not have to elevate this matter based on your behavior."

55. Hilton-Rorar dropped off all of Gilbert Co.'s items to the security desk in the lobby at approximately 3:15 p.m.

56. On May 9, 2020, Gilbert emailed Attorney DeHaven "Please provide proof of purchase. I thought this equipment was one of several I bought a few years ago. Meanwhile you are free to file what ever you want. Keep in mind I can also counter."

57. On May 9, 2020 at approximately 11:55 a.m., Gilbert sent a text to Hilton-Rorar that stated "Tracee: Can we take a time out and talk? Ed"

58. At the time of filing this Complaint, Gilbert has not returned Hilton-Rorar's personal desktop computer.

## COUNT ONE: VIOLATION OF 18 U.S.C. § 2701
## STORED COMMUNICATIONS ACT

59. Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

60. Section 2701 of the Stored Communications Act (18 U.S.C. § 2701 et. seq.) provides, in pertinent part:

Except as provided in subsection (c) of this section, whoever -

l) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

61. At all relevant times, the SCA was in full force and effect and governed the accessing of facilities through which electronic communication service is provided.

62. Section 2711 of the SCA defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic photo electronic or photo optical system that affects interstate or foreign commerce ... " 18 U.S.C. § 2510(12). Accordingly, the webcam images complained of are "electronic communications" within the meaning of the SCA.

63. Section 2701(b) of the SCA provides punishment in those instances where the unauthorized acquisition of stored electronic communications was not done for commercial gain or advantage of "a fine under this title or imprisonment for not more than six months, or both ...." 18 U.S.C. § 2701(b)(B).

64. Plaintiff's personal desktop computer contains confidential, private, and personal information, including, but not limited to, personal passwords, communications with legal counsel protected by attorney-client privilege, personal email account, medical records, photographs, information about her then minor children, that has significant value.

65. Defendants Gilbert and Wade knowingly, intentionally, and willfully accessed Plaintiff's computer without authorization and obtained electronic communications that were being electronically stored therein.

66. Gilbert Co., by and through Gilbert, induced Wade to access Hilton-Rorar's personal computer that contained her personal information.

67. Defendants' actions violated 18 U.S.C. § 2701 and give rise to a claim under 18 U.S.C. § 2807.

68. **WHEREFORE**, Plaintiff prays that judgment be entered in her favor and against all Defendants, jointly and severally, as follows: compensatory damages of $1,000,000; statutory damages pursuant to 18 U.S.C. § 2707; attorneys' fees, costs, and litigation expenses pursuant to 18 U.S.C. § 2707; punitive damages in the amount of $500,000 pursuant to 18 U.S.C. § 2707; any other relief this Court may deem is fair and equitable.

## COUNT TWO: VIOLATION OF 18 U.S.C. § 1030 THE COMPUTER FRAUD AND ABUSE ACT

69. Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

70. The Computer Fraud and Abuse Act (CFAA") 18 U.S.C. § 1030 et seq., makes it unlawful to intentionally access a computer without authorization, or to exceed

authorized access, to obtain information from any protected computer.[3] 18 U.S.C. §
1030(a)(2)(C).

71. The CFAA also makes it unlawful to intentionally access a computer without
authorization and, as a result of such conduct, cause damage and loss. 18 U.S.C. §
1030(a)(5)(C).

72. Under the CFAA, "the term 'computer' means an electronic, magnetic, optical,
electrochemical, or other high speed data processing device performing logical,
arithmetic, or storage functions, and includes any data storage facility or communications
facility directly related to or operating in conjunction with such device, but such term
does not include an automated typewriter or typesetter, a portable hand held calculator, or
other similar device[.]" 18 U.S.C. § 1030(e)(1).

73. Under the CFAA, "the term 'protected computer' means a computer – . . . (B) which is
used in or affecting interstate or foreign commerce or communication . . ." 18 U.S.C. §
1030(e)(2).

74. The "term 'damage' means any impairment to the integrity or availability of data, a
program, a system, or information[.]" 18 U.S.C. § 1030(e)(8).

75. The "term 'loss' means any reasonable cost to any victim, including the cost of
responding to an offense, conducting a damage assessment, and restoring the data,
program, system, or information to its condition prior to the offense, and any revenue
lost, cost incurred, or other consequential damages incurred because of interruption of
service[.]" 18 U.S.C. §1030(e)(11).

---

[3] The "term 'exceeds authorized access' means to access a computer with authorization and to
use such access to obtain or alter information in the computer that the accesser is not entitled so
to obtain or alter[.]" 18 U.S.C. § 1030(e)(6).

76. Plaintiff's personal desktop computer falls within the definition of a protected computer as it is used in interstate commerce or communication.

77. Plaintiff's personal desktop computer contains confidential, private, and personal information, including, but not limited to, personal passwords, communications with legal counsel protected by attorney-client privilege, personal email account, medical records, photographs, information about her then minor children, that has significant value.

78. Plaintiff's personal desktop computer is still in Defendants' possession.

79. Defendants Gilbert and Wade's wrongful actions violated the CFAA and directly and/or proximately caused Plaintiff to suffer loss and damages.

80. Gilbert Co., by and through Gilbert, induced Wade to access Hilton-Rorar's personal computer that contained her personal information.

81. The aggregated loss to Plaintiff exceeds $5,000 in value. 18 U.S.C. § 1030(c)(4)(A)(i)(I).

82. **WHEREFORE**, Plaintiff prays that judgment be entered in her favor and against all Defendants, jointly and severally, as follows: compensatory damages of $1,000,000; statutory damages pursuant to 18 U.S.C. § 1030 et seq.; attorneys' fees, costs, and litigation expenses pursuant to 18 U.S.C. § 1030 et seq.; punitive damages in the amount of $500,000 pursuant to 18 U.S.C. § 1030 et seq.; any other relief this Court may deem is fair and equitable.

### COUNT THREE: VIOLATION OF 18 U.S.C. § 2510, et seq. THE ELECTRONIC COMMUNICATIONS PRIVACY ACT/ WIRETAP ACT

83. Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

84. Plaintiff brings this claim pursuant to The Electronic Communications Privacy Act ("ECPA") (18 U.S.C. § 2510 et seq.), which permits civil recovery for those whose "wire, oral, or electronic communication" has been "intercepted, disclosed, or intentionally used" in violation of, inter alia, the Wiretap Act, 18 U.S.C. § 2511. 18 U.S.C. § 2520(a).

85. Section 2511 of the ECPA provides in part;

(1) Except as otherwise specifically provided in this chapter any person who-

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept, or endeavor to intercept, any ... electronic communications;

\*\*\*\*\*

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any ... electronic communication knowing or having reason to know that the information was obtained through the interception of a[n] ... electronic communication in violation of this subsection; ... shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

86. Section 2520 of the ECPA provides in part;

(a) In general. - Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted or intentionally used in violation of this chapter may in a civil action recover from the person or entity… which engaged in that violation such relief as may be appropriate

(b) Relief. - In the action under this section, appropriate relief includes -

(1) such preliminary and other equitable or declaratory relief as may be appropriate

(2) damages under subsection (c) and punitive damages in appropriate cases; and

(3) a reasonable attorney's fee and other litigation costs reasonably incurred.

87. Section 2510 defines "electronic communication" to include "any transfer of signs, signals, writing, imaging, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic photo electronic, or photo optical system that affects interstate or foreign commerce."

88. Plaintiff asserts this Count against all Defendants, jointly and severally, pursuant to §§ 2511 and 2520 of the ECPA, 18 U.S.C. §§ 2511 and 2520.

89. Plaintiff's personal desktop computer contains confidential, private, and personal information, including, but not limited to, personal passwords, communications with legal counsel protected by attorney-client privilege, personal email account, medical records, photographs, information about her then minor children, that has significant value.

90.  Plaintiff's personal information constitutes "wire, oral, or electronic communication" within the meaning of the statute.

91. As described herein, upon information and belief, Defendants Gilbert and Wade intentionally intercepted and collected wire or electronic communications from Plaintiff without her consent.

92. The transmission of data between Plaintiff's computer or other devices and the Internet constitutes "electronic communication" within the meaning of 18 U.S.C. § 2510(12).

93. Defendants Gilbert and Wade's data collection/hacking as described herein constitutes "interceptions" within the meaning of § 2510(4).

94. As a direct and proximate result of such unlawful conduct, Defendants Gilbert and Wade violated 18 U.S.C. § 2511 in that Defendants:

a. Upon belief predicated upon further discovery, intentionally intercepted, endeavored to intercept, or procured another person to intercept wire and/or electronic communications of the Plaintiff;

b. Upon belief predicated upon further discovery, intentionally disclosed or endeavored to disclose to another person the contents of Plaintiff's wire or electronic communications, knowing or having reason to know that the information was obtained through the interception of wire or electronic communications in violation of 18 U.S.C. §2511(1)(a).

c. Upon belief predicated upon further discovery, intentionally used or endeavored to use the contents of Plaintiff's wire or electronic communications, knowing or having reason to know that the information through the interception of wire or electronic communications in violation of 18 U.S.C. §2511(1)(a).

95. Defendants Gilbert and Wade's actions described herein were for the purpose of committing tortious acts in violation of the laws of the United States and Ohio. In taking their actions, Defendants Gilbert and Wade committed the tortious act of invasion of privacy (intrusion upon plaintiff's seclusion).

96. Gilbert Co., by and through Gilbert, induced Wade to access Hilton-Rorar's personal computer and intercept her personal information.

97. Defendants' conduct gives rise to a claim under 18 U.S.C. § 2520, and/or under a theory of vicarious liability.

98. As a result of the above violations and pursuant to 18 U.S.C. § 2520, Defendants are liable to Plaintiff in the sum of statutory damages consisting of the greater of $100 for each day each of Plaintiff's data was wrongfully obtained or $10,000 per violation;

compensatory damages; injunctive and declaratory relief; punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendants in the future, and a reasonable attorney's fee and other litigation costs reasonably occurred.

99. **WHEREFORE**, Plaintiff prays that judgment be entered in her favor and against all Defendants, jointly and severally, as follows: compensatory damages of $1,000,000; statutory damages pursuant to 18 U.S.C. § 2520; attorneys' fees, costs, and litigation expenses pursuant to 18 U.S.C. § 2520; punitive damages in the amount of $500,000 pursuant to 18 U.S.C. § 2520; any other relief this Court may deem is fair and equitable.

## COUNT FOUR: INVASION OF PRIVACY

100. Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

101. Defendants Gilbert and Wade intentionally intruded upon the solitude and seclusion of Plaintiff's private affairs when they improperly accessed Plaintiff's computer.

102. Defendants' intrusions would be highly offensive to a reasonable person.

103. At all relevant times Defendant Gilbert intruded upon the solitude and seclusion of Plaintiff's private affairs, he was acting within the scope of his employment at Defendant Gilbert Co.

104. Defendants are liable under Ohio law for invasion of the privacy of Plaintiff.

105. Gilbert Co., by and through Gilbert, induced Wade to access Hilton-Rorar's personal computer that contained her personal information.

106.     **WHEREFORE**, Plaintiff prays that judgment be entered in her favor and against all Defendants, jointly and severally, as follows: compensatory damages of $1,000,000; attorneys' fees, costs, and litigation expenses; punitive damages in the amount of $500,000; any other relief this Court may deem is fair and equitable.

## COUNT FIVE: CIVIL RECOVERY FOR CRIMINAL ACT UNDER R.C. 2913.04

107.     Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

108.     Plaintiff asserts a claim under R.C. §§ 2307.60 and 2307.61, which permit a person injured by another's criminal conduct to recover against the perpetrator of the crime.

109.     R.C. § 2913.04(B) defines the crime on which Plaintiff bases her claim:

> No person, in any manner and by any means, including, but not limited to, computer hacking, shall knowingly gain access to, attempt to gain access to, or cause access to be gained to any computer, computer system, computer network, cable service, cable system, telecommunications device, telecommunications service, or information service without the consent of, or beyond the scope of express or implied consent of, the owner of the computer, computer system, computer network, cable service, cable system, telecommunications device, telecommunications service, or information service or other person authorized to give consent.

110.     Defendants Gilbert and Wade knowingly gained access to or attempted to gain access to Plaintiff's computer system, telecommunications device, and /or information service without Plaintiff's consent, in violation of R.C. 2913.04(B).

111.     Gilbert Co., by and through Gilbert, induced Wade to access Hilton-Rorar's personal computer that contained her personal information.

112.     Pursuant to R.C. 2307.60 and R.C. 2307.61, Plaintiff is entitled to recover statutory damages, as wells as attorneys' fees and other damages as set forth in the statute.

113.     **WHEREFORE**, Plaintiff prays that judgment be entered in her favor and against all Defendants, jointly and severally, as follows: compensatory damages of $1,000,000; statutory damages pursuant to R.C. 2307.60 and R.C. 2307.61; attorneys' fees, costs, and litigation expenses pursuant to R.C. 2307.60 and R.C. 2307.61; punitive damages in the amount of $500,000 pursuant to R.C. 2307.60 and R.C. 2307.61; any other relief this Court may deem is fair and equitable.

## COUNT SIX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

114.     Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

115.     Gilbert Co., by and through Gilbert, induced Wade to access Hilton-Rorar's personal computer that contained her personal information.

116.     Defendants Gilbert and Wade intended to cause emotional distress or should have known their actions of accessing Plaintiff's computer without consent would result in serious emotional distress to Plaintiff, and their actions go beyond the bounds of possible decency.

117.     Further, Defendant Gilbert intended to cause emotional distress or should have known his actions of discriminating and retaliating against Plaintiff would result in serious emotional distress to Plaintiff, and his actions go beyond the bounds of possible decency.

118.     Defendants' actions proximately caused Plaintiff to suffer serious mental anguish, insomnia, depression, grief, anger, disappointment, and worry, and is seeking psychological treatment for serious mental injuries.

119.     The mental anguish suffered by Plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

120.     **WHEREFORE**, Plaintiff prays that judgment be entered in her favor and against all Defendants, jointly and severally, as follows: compensatory damages of $1,000,000; attorneys' fees, costs, and litigation expenses; punitive damages in the amount of $500,000; any other relief this Court may deem is fair and equitable.

## COUNT SEVEN: DISABILITY DISCRIMINATION UNDER R.C. 4112

121.     Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

122.     Defendant Gilbert Co. is an employer within the meaning of the Ohio Civil Rights Act (the "OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically as provided in R.C. 4112.01(A)(2) of the OCRA.

123.     At all relevant times, Plaintiff was disabled, within the meaning of the OCRA and/or Defendants Gilbert Co. and Gilbert perceived and/or regarded Plaintiff as having a disabling condition; and said condition and/or perception constitutes a covered "disability" within the meaning of R.C. 4112.01, et seq.

124.     At all relevant times, Defendants Gilbert Co. and Gilbert knew Plaintiff was disabled, within the meaning of the OCRA and/or Defendants Gilbert Co. and Gilbert perceived and/or regarded Plaintiff as having a disabling condition; and said condition

and/or perception constitutes a covered "disability" within the meaning of R.C. 4112.01, et seq.

125. Adverse employment actions were taken by Gilbert Co. and Gilbert (i.e. reduction in pay, removal of vacation days, sick days and paid parking, termination), at least in part, because Plaintiff was disabled or regarded as having a disability.

126. Plaintiff, although disabled or regarded as having a disability, could substantially perform the essential functions of the job.

127. By reason of the foregoing acts and omissions of discriminatory conduct by Defendants Gilbert Co. and Gilbert in violation of the OCRA, Plaintiff has been damaged.

128. As a direct and proximate result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendants in violation of R.C. 4112 et seq., Plaintiff sustained permanent and irreparable harm, resulting in her termination from employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

129. As a further direct and proximate result of the aforesaid unlawful discriminatory employment practices engaged in by Defendants in violation of R.C. 4112 et seq., Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

130. Defendants Gilbert Co. and Gilbert's conduct was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights. Thus, Plaintiff is entitled to punitive damages.

131.     **WHEREFORE**, Plaintiff demands against Defendants Gilbert Co. and Gilbert reinstatement, compensatory damages of $1,000,000, punitive damages of $500,000, back pay, front pay, attorneys' fees, costs and any other relief this Court may deem is fair and equitable.

**COUNT EIGHT: FAILURE TO ACCOMMODATE UNDER R.C. 4112**

132.     Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

133.     Defendant Gilbert Co. is an employer within the meaning of the Ohio Civil Rights Act (the "OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically as provided in R.C. 4112.01(A)(2) of the OCRA.

134.     At all relevant times, Plaintiff was disabled, within the meaning of the OCRA and/or Defendants Gilbert Co. and Gilbert perceived and/or regarded Plaintiff as having a disabling condition; and said condition and/or perception constitutes a covered "disability" within the meaning of R.C. 4112.01, et seq.

135.     At all relevant times, Defendants Gilbert Co. and Gilbert knew Plaintiff was disabled, within the meaning of the OCRA and/or Defendants Gilbert Co. and Gilbert perceived and/or regarded Plaintiff as having a disabling condition; and said condition and/or perception constitutes a covered "disability" within the meaning of R.C. 4112.01, et seq.

136.     Plaintiff was at all times qualified to be an attorney and managing associate.

137.     Plaintiff satisfied the prerequisites for the position and could perform the essential functions of the job with or without accommodation.

138.     The actions of the Defendant Gilbert Co. and Gilbert, in discriminating against Plaintiff on the basis of her actual and/or perceived disability and/or record of impairment, and failing to provide reasonable accommodation for her disability, constituted violations of R.C. 4112 et seq.

139.     Defendants failed to permit Plaintiff to work with the minimal, temporary accommodation she needed (i.e. continue teleworking for five weeks), but instead reduced her pay, took away her vacation and sick days and paid parking, and then terminated her employment without engaging in the interactive process.

140.     Such accommodation to permit Plaintiff to continue to telework until her scheduled surgery (i.e. five weeks) would not have caused undue hardship on Gilbert or Gilbert Co.

141.     As a direct and proximate result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendants in violation of R.C. 4112 et seq., Plaintiff sustained permanent and irreparable harm, resulting in her termination from employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

142.     As a further direct and proximate result of the aforesaid unlawful discriminatory employment practices engaged in by Defendants in violation of R.C. 4112 et seq., Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

143.     Defendants Gilbert Co. and Gilbert's conduct was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights. Thus, Plaintiff is entitled to punitive damages.

**144.     WHEREFORE**, Plaintiff demands against Defendants Gilbert Co. and Gilbert reinstatement, compensatory damages of $1,000,000, punitive damages of $500,000, back pay, front pay, attorneys' fees, costs and any other relief this Court may deem is fair and equitable.

## COUNT NINE: RETALIATION UNDER R.C. 4112

145.     Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

146.     Defendant Gilbert Co. is an employer within the meaning of the Ohio Civil Rights Act (the "OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically as provided in R.C. 4112.01(A)(2) of the OCRA.

147.     Plaintiff engaged in protected activity (i.e. complaining of discrimination; filing OCRC charge).

148.     Defendants Gilbert Co. and Gilbert knew of Plaintiff's protected activity.

149.     Defendants Gilbert Co. and Gilbert subjected Plaintiff to materially adverse actions in the form of threats and intimidation, including, but not limited to, advising her that her salary was immediately reduced by $15,000 per year, taking away her paid vacation and sick days, and taking away her paid parking, hacking into her personal computer, threatening to "counter" any complaints to the Bar (regardless of truth), and ultimately terminating Plaintiff without cause.

150.     Defendants Gilbert Co. and Gilbert retaliated against Plaintiff by reducing her salary, and taking away her vacation days, sick days, and paid parking after she requested a reasonable accommodation based on disability.

151.     Defendants Gilbert Co. and Gilbert further retaliated against Plaintiff on account of her engagement in the aforementioned protected (i.e. complaining of discrimination; filing OCRC charge) by terminating Plaintiff's employment.

152.     Defendants Gilbert Co. and Gilbert further retaliated against Plaintiff after she complained to Defendants Gilbert Co. and Gilbert of discrimination based on disability and retaliation when Gilbert and Wade tried to intimidate her by attempting to hack into (and later successfully hacking into) her personal computer.

153.     A causal connection exists between Plaintiff's protected conduct and the materially adverse actions taken by Defendants Gilbert Co. and Gilbert.

154.     Defendants Gilbert Co. and Gilbert's conduct violated Ohio R.C. 4112.02(1).

155.     As direct and proximate result of Defendants Gilbert Co. and Gilbert's unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages, including, but not limited to, economic damages, emotional pain and suffering, and other losses to be proven at trial.

156.     Defendants Gilbert Co. and Gilbert's conduct was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights. Thus, Plaintiff is entitled to punitive damages.

157.     By reason of the foregoing acts and omissions of retaliatory conduct by Defendants Gilbert Co. and Gilbert in violation of the OCRA, Plaintiff has been damaged.

158.     **WHEREFORE**, Plaintiff demands against Defendants Gilbert Co. and Gilbert reinstatement, compensatory damages of $1,000,000, punitive damages of $500,000, back pay, front pay, attorneys' fees, costs and any other relief this Court may deem is fair and equitable.

## COUNT TEN: BREACH OF CONTRACT

159.     Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

160.     Plaintiff and Defendant Gilbert Co., by and through Gilbert, entered into an Employment Agreement entered into on or about June 15, 2015. (See Exhibit 1).

161.     On or about August 9, 2019, Plaintiff and Gilbert modified such Agreement increasing Plaintiff's salary $12,500 per year, giving Hilton-Rorar one additional week of paid vacation, and a temporary reserved parking space. (See Exhibit 2).

162.     On August 14, 2019, Plaintiff and Gilbert made additional modifications. Plaintiff's salary increase would be $10,000 (rather than $12,500). (See Exhibit 2).

163.     Defendant Gilbert Co., by and through Gilbert, breached the Employment Agreement through the actions described herein, including inter alia, unilaterally reducing Plaintiff's salary by $15,000, taking away Plaintiff's vacation days, sick days, and paid parking, and terminating Plaintiff's employment.

164.     Under the Employment Agreement (modified on or about August 14, 2019), Plaintiff's salary was $65,000 per year, Gilbert Co. provided three paid weeks of vacation, five paid sick/bereavement days, and paid parking.

165.     Under the Employment Agreement, Plaintiff was to be categorized as an employee, not an independent contractor.

166.     Defendant Gilbert Co., by and through Gilbert, breached the agreement by paying

her as an independent contractor, rather as an employee.

167.     Under the Employment Agreement, Gilbert was to give Plaintiff 30 days' advance

written notice of intent to terminate said contract.

168.     Plaintiff was given <u>no</u> advance notice. Gilbert simply notified Plaintiff that her

services were no longer needed.

169.     At the time of Defendant Gilbert Co., by and through Gilbert's breaches, Plaintiff

had substantially performed all of her duties under the Employment Agreement,.

170.     As a direct and proximate result of Defendant Gilbert Co.'s, breaches of the

Employment Agreement, by and through Gilbert, Plaintiff incurred damages.

171.     **WHEREFORE**, for the reasons stated above, Plaintiff respectfully requests that

judgment be entered for Plaintiff against Defendants Gilbert Co. and Gilbert in the

amount of $500,000, plus other appropriate damages, including interest at the allowable

pre-judgment rate, attorneys' fees and costs and such other and further relief as the Court

may deem just and equitable.

## <u>COUNT ELEVEN: CONVERSION</u>

172.     Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully

rewritten herein.

173.     Plaintiff is the rightful owner of the HP desktop computer (tower, montor,

keyboard, mouse) that she purchased with her own funds on September 9, 2013 and

September 18, 2018.

174.     Defendants Gilbert Co., Gilbert, and Wade have actual knowledge that Plaintiff is

the rightful owner of said computer.

175.     Defendants Gilbert Co., Gilbert, and Wade have wrongfully, intentionally, willfully, wantonly, and maliciously, converted said computer by exercising dominion and control over Plaintiff's property in a manner inconsistent with Plaintiff's rights of ownership.

176.     As a direct and proximate result of Defendants Gilbert Co., Gilbert, and Wade's wrongful conversion, Plaintiff has been damaged and continues to incur additional damages.

177.     **WHEREFORE**, for the reasons stated above, Plaintiff respectfully requests that judgment be entered for Plaintiff against all Defendants in the amount of $500,000, punitive damages of $500,000, plus other appropriate damages, including interest at the allowable pre-judgment rate, attorneys' fees and costs and such other and further relief as the Court may deem just and equitable.

## COUNT TWELVE: REPLEVIN

178.     Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

179.     Plaintiff owns an HP desktop computer (tower, monitor, keyboard, and mouse).

180.     Plaintiff's ownership of the property is evidenced by a Best Buy electronic receipts dated September 9, 2013 and Amazon receipt dated September 18, 2018.

181.     Defendants Gilbert Co. and Gilbert took possession of property belonging to Plaintiff on May 6, 2020.

182.     Upon information and belief, Defendant Wade has possession of Plaintiff's hard drive and/or cloned copy of hard drive.

183.　　　Defendants Gilbert Co. and Gilbert took possession of Plaintiff's HP desktop computer by failing to return it to Plaintiff after her termination of employment.

184.　　　Upon information and belief, Defendant Wade took possession of Plaintiff's hard drive and/or cloned copy of hard drive on or about May 8, 2020 when he removed it from her computer.

185.　　　Plaintiff requests the return of her property.

186.　　　Defendants failed to return the property belonging to Plaintiff.

187.　　　The HP desktop computer (excluding Hilton-Rorar's personal data and intellectual property) being held by Defendants is worth about $530.00.

188.　　　Upon information and belief, the property is in the actual possession of Defendants Gilbert Co., Gilbert, and Wade and is located at One Cascade Plaza, Suite 825, Akron, Ohio 44308 and 3195 Stanley Road, Akron, Ohio 44333

189.　　　Defendants have wrongfully exerted control of Plaintiff's property.

190.　　　Defendants have converted Plaintiff's property.

191.　　　**WHEREFORE**, Plaintiff requests that the Court order the following relief:

    a.　Find that Plaintiff is the owner of the property in question;

    b.　Order Defendants to return the property to Plaintiff;

    c.　Grant Plaintiff costs; and

    d.　Grant any other relief that may be just or equitable

## COUNT THIRTEEN: INJUNCTIVE RELIEF

192.　　　Plaintiff incorporates the preceding paragraphs of her Complaint, as if fully rewritten herein.

193.     Plaintiff has no adequate remedy at law and will suffer immediate and irreparable

harm if Defendants are permitted to continue to have access to her personal computer and

personal data, including but not limited to personal passwords and confidential records,

contained in such computer.

194.     **WHEREFORE**, for the reasons stated above, Plaintiff respectfully requests this

Court for a temporary restraining order and a preliminary and permanent mandatory

injunction as follows:

    a.  Defendants shall immediately cease accessing Plaintiff's personal computer;

    b.  Defendants shall immediately return all of Plaintiff's property;

    c.  Defendants shall immediately cease any and all actions that would damage or
        destroy Plaintiff's reputation;

    d.  Defendants shall immediately cease making any threats of any kind toward
        Plaintiff;

    e.  Defendants shall not directly contact, in person, by telephone, or otherwise,
        Plaintiff or her immediate family members;

    f.   For such other and further relief to which Plaintiff may be entitled in equity or
        law.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by a jury of all issues stated herein so triable at law.

Respectfully submitted,

/s/ Darren W. DeHaven
Darren W. DeHaven (#0065312)
**Law Office of DARREN DeHAVEN, Ltd.**
darren@dehavenlaw.com
3500 Massillon Road, Suite 410
Uniontown, Ohio 44685
(330) 256-4444 (direct/ cellular)
(330) 899-3855
(330) 850-9905 Fax

Scott Salsbury (#0039287)
**SALSBURY & SALSBURY, LPA**
ssalsbury@salsburylaw.com
5611 Hudson Drive, Suite 400
Hudson, Ohio 44236
(330) 655-5760
(330) 655-0526 Fax

Attorneys for Plaintiff